**Susan I. MEUSBERGER, Appellee,**

v.

**Charles M. PALMER, Director of the Iowa Department of Human Services, Appellant.**

**No. 89–2021.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1990.

Decided April 17, 1990.

Rehearing and Rehearing En Banc Denied May 30, 1990.

Daniel W. Hart, Des Moines, Iowa, for appellant.

Thomas A. Krause, Des Moines, Iowa, for appellee.

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas, sitting by designation.

Before LAY, Chief Judge, BEAM, Circuit Judge, and WOODS,* District Judge.

WOODS, District Judge.

The Iowa Department of Human Services ("IDHS") appeals the order of the district court[1] requiring IDHS to fund the plaintiff's pancreas transplant. The IDHS challenges the district court's finding (1) that it was the IDHS policy to fund all nonexperimental transplant surgeries, and (2) that pancreas transplants are nonexperimental. We affirm.

## I. BACKGROUND

The plaintiff, Susan Meusberger, has severe, or "brittle," diabetes. In a non-diabetic, the pancreas secretes insulin into the body as needed to regulate blood sugar levels. Many diabetics artificially regulate blood sugar levels with injections of insulin, absorbed by the body at a predictable rate. However, in the case of brittle diabetics, such as the plaintiff, the absorption rate of administered insulin is unpredictable. Ms. Meusberger's condition is made more unstable by a diabetic complication, autonomic neuropathy, which interferes with the normal absorption of food from her gastrointestinal tract. Because of this complication, the absorption rate of food is unpredictable, thus her need for insulin is unpredictable.

As a result of her brittle diabetes, Ms. Meusberger suffers multiple secondary complications including retinopathy (progressive damage to the retina, eventually resulting in blindness), peripheral neuropathy (loss of feeling in the extremities, often resulting in irreparable damage to the hands and feet), autonomic neuropathy (interference with the normal function of vital organs, such as the heart and kidneys) and nephropathy (kidney failure). Without the pancreas transplant, Ms. Meusberger, now thirty-one years of age, would face certain

1. The Honorable Donald E. O'Brien, Chief Judge, United States District Court for the Northern District of Iowa.

blindness and kidney failure within the next few years, and a probable early death.[2]

The parties agree that Ms. Meusberger is entitled to Medicaid benefits and that she has applied to the IDHS for coverage of a pancreas transplant under Medicaid. The IDHS has denied the request for coverage, citing IDHS rules at 441 Iowa Admin. Code §§ 78.1(1)(f),[3] 78.1(20)[4] and 78.3(10).[5] These sections constitute Iowa's required written policy concerning the funding of organ transplants.[6] The IDHS contends that their policy was to fund only those organ transplants designated nonexperimental by Medicare.

The district court held that the intent of the written policy was to fund all nonexperimental organ transplants, and that the reliance on Medicare's designation of "nonexperimental" was intended as an administrative convenience rather than an inalterable adherence.

Having determined that the IDHS policy was to fund all nonexperimental organ transplants, the district court went on to hold that pancreas transplants are not experimental, and are, thus, covered by the Iowa Medicaid plan.

## II. DISCUSSION

Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, commonly called the Medicaid statute, provides for federal grants to enable states to provide medical care to persons whose income and resources are insufficient to meet the costs of necessary medical services. Participation by a state in the Medicaid program is optional, but in order for a state to receive federal funds, its approved plan must meet all requirements of Title XIX as well as the implementing regulations. 42 U.S.C. § 1396a.

States have some discretion in determining which medical services to cover under their Medicaid program. Other medical services, such as inpatient and outpatient hospital services, laboratory and X-ray services, skilled nursing facility services, and physician services must be provided. 42 U.S.C. § 1396d(a)(1)–(5). These required medical services must be provided whenever they are "medically necessary." *Ellis v. Patterson*, 859 F.2d 52 (8th Cir.1988).

This court has held that state Medicaid plans need not fund organ transplants, even when they are "medically necessary." *Ellis*, at 55. States may elect which, if any, organ transplants to cover. *Id.* However, once a state has adopted a policy to cover a category of organ transplants, it may not arbitrarily or unreasonably deny services to an otherwise eligible Medicaid recipient.

Ms. Meusberger's contention is materially different from that of the plaintiff in *Ellis*. In that case, the parents of Brandy Ellis contended that the State of Arkansas was required to fund their baby's liver transplant as a "necessary in-patient ser-

2. In oral argument, the parties informed the Court that Ms. Meusberger has now had the needed pancreas transplant at the University of Minnesota Hospital. However, the case before this court is not moot, since the parties still dispute whether the IDHS should be liable for the cost of the surgery, estimated to be $35,000.

3. Section 78.1(1)(f) provides:
    Unproven or experimental medical and surgical procedures. The criteria in effect in the Medicare program shall be utilized in determining when a given procedure is unproven or experimental in nature.

4. Section 78.1(20) provides, in pertinent part:
    *Transplants.* Payment will be made for organ and tissue transplants and related services are designated nonexperimental by Medicare. . . .

5. Section 78.3(10) provides, in pertinent part:
    Payment will be approved for organ and tissue transplants and related services which are considered nonexperimental by Medicare. Medicare guidelines are followed for the coverage of kidney, cornea, skin, bone, allogeneic bone marrow, heart and liver transplants. (Cross-reference 78.1(20)). . . .

6. 42 U.S.C. § 1396b(i) provides in pertinent part:
    Payment under the preceding provisions of this section shall not be made—
    (1) for organ transplant procedures unless the State plan provides for written standards respecting the coverage of such procedures and unless such standards provide that—
    (A) similarly situated individuals are treated alike . . .

vice." *See, Pinneke v. Preisser,* 623 F.2d 546, 548 n. 2 (8th Cir.1980). The Court rejected the notion that organ transplants, even when medically necessary, are among those medical services states are required to provide.

In this case, the seminal question is not whether the State of Iowa must provide pancreas transplants to Medicaid recipients. That issue was decided in *Ellis.* Rather, the question is whether the district court erred in interpreting the IDHS policy.

■ There is ample evidence in the record to support the district court's interpretation that the Iowa statutes and regulations refer to Medicare designation of "experimental" as a matter of administrative convenience and not as an absolute.

As an initial matter, Medicare has not designated pancreas transplants as either "experimental" or "nonexperimental." The Medicare "Coverage Issues Manual" states in pertinent part: "Pancreas transplants of any type are considered *investigational* and are, therefore, not covered under Medicare." [Emphasis added]. Testimony presented to the district court indicated that "investigational" procedures are those in which patients are asked to participate in follow-up studies. (J.App. 48) Iowa Medicaid rules require that all facilities performing heart and liver transplants, which are covered under Medicaid, collect and maintain data on recipients and have a "detailed plan for review and evaluation of recipient selection, preoperative, operative, postoperative and long-term management of the recipient." 441 Iowa Admin.Code § 78.3(10)e. Thus, although heart and liver transplants are "investigational" in Iowa, they are not excluded from Medicaid coverage.

The IDHS written policy covering organ transplants became effective in July, 1987. A September, 1988, letter from the Commissioner of the IDHS to the plaintiff, rejecting her request for reimbursement for a pancreas transplant, states in pertinent part: "[T]he Department of Human Services remains confident in our policy to deny coverage for pancreas transplants as they are an experimental procedure." (J.App. 218).

Nowhere in that letter does the Commissioner refer to reliance on Medicare designations. Medicare is never even mentioned in the letter. In fact, the letter indicates that the staff in the [Iowa] Bureau of Medical Services had gone beyond perfunctory enforcement and acceptance of the Medicare "experimental" designation and had contacted the Office of Technology Assessments in the Department of Health and Human Services to determine the "status of pancreas transplants." The Commissioner's letter noted that, "[P]ancreas transplants are not an established medical procedure; they are still investigational.... [they] are not as safe or effective as the alternative treatment of insulin."

■ The IDHS contends that judicial review of its transplant policy is limited to whether the State's absolute adherence to Medicare determinations is unreasonable; and that the decision must be made without reviewing whether the Medicare determination was reasonable. This would, in effect, shield the State's policies from any meaningful judicial review.

Certainly there is nothing improper or inappropriate about the IDHS's general reliance on Medicare designations of particular organ transplants as experimental/nonexperimental. However, the intent of the Congressional requirement that states adopt *written* criteria for organ transplant coverage was to provide objective criteria, subject to challenge as being arbitrary or unreasonable. Medicaid recipients must have a forum to challenge unreasonable or arbitrary determinations. A state cannot avoid scrutiny and evade review of unreasonable policies by simply delegating absolutely the decision-making to a federal agency charged with a substantially different mission.

For these reasons we find that the district court did not err in its finding that it

was the policy of the IDHS to fund all nonexperimental transplants. Having found that to be the policy, we do not find that the district court's determination that pancreas transplant procedures are nonexperimental to be clearly erroneous.

While the pancreas transplant *procedure* is no longer experimental, we cannot say that all pancreas transplants are nonexperimental. Liver transplants are covered by Medicare and by the Iowa Medicaid plan. Yet the Medicare "Coverage Issues Manual" states in pertinent part: "For most people, liver transplantation is considered an experimental procedure and, therefore, is not covered. However ... liver transplantation is not considered experimental with respect to children (under age 18) with extrahepatic biliary atresia or any other form of end-stage liver disease ..." (J.App. 178).

The record in this case reveals a similar situation with respect to pancreas transplants. Dr. William C. Duckworth, Chief of the Diabetes–Endocrine Center at the University of Nebraska Medical Center, summarized: "Thus, the [pancreas transplant] procedure itself is not experimental. Simply the need and indications for the transplantation remains in the experimental realm. Again, in Susan[ ] [Meusberger's] case, this is not an issue because her need far outweighs any potential risk in this procedure." (J.App. 163).

The district court had the benefit of the testimony of the foremost expert in the field of pancreas transplants, Dr. David Sutherland. He testified that the 1984 report, upon which Medicare based its determination not to fund any pancreas transplants, was incorrect even at the time it was issued. He further stated that the success rate for pancreas transplants for the years 1986 through 1988 was 60%, about the success rate of liver transplants. (J.App. 64). The success rate at the University of Minnesota Hospital for nonuremic[7] pancreas transplant recipients for the year 1988 was 85%.

### III. CONCLUSION

For the reasons set forth, we find no error in the district court's findings that the IDHS policy was to fund all nonexperimental organ transplants and that the pancreas transplant procedure is nonexperimental. The decision of the district court is affirmed.

BEAM, Circuit Judge dissenting.

I respectfully dissent. I believe that our opinion in *Ellis v. Patterson*, 859 F.2d 52 (8th Cir.1988) controls this case. In *Ellis*, we held that "the State of Arkansas is not required to fund organ transplants under Medicaid, and that it may choose which kinds of organ transplants, if any, to cover." *Id.*, 859 F.2d at 55. Thus, Iowa was not required to fund any pancreas transplant, other than on its own terms. Iowa was free to adopt its own policy. Once Iowa decided to pay for some types of organ transplants, however, Title XIX of the Social Security Act regulated Iowa's decision by requiring that Iowa must provide "written standards respecting the coverage of such procedures," and that such standards must treat similarly situated individuals alike. 42 U.S.C. § 1396b(i) (Supp. V 1987).

Iowa enacted Iowa Admin.Code rr. 441–78.1(1)(f), 441–78.1(20), and 441–78.3(10). As the majority opinion correctly states, these sections of the Iowa Code constitute Iowa's required written standard. The Iowa Code provides, in relevant part, that "[p]ayment will be made for organ and tissue transplants and related services which are designated nonexperimental by Medicare." *Id.* r. 441–78.1(20).

Iowa has complied with 42 U.S.C. § 1396b(i) and provided written standards for organ transplant coverage. The issue in this case, therefore, is whether Iowa's written criteria is objective or subject to challenge as being arbitrary or unreasonable. I believe that a state standard, which consistently refers to the federal Medicare guidelines for transplant coverage, is objec-

---

7. Uremic patients also suffer from kidney failure and often require kidney transplants.

tive and reasonable. Thus, the only remaining question is whether Iowa followed the Medicare guidelines in Meusberger's case, as it proposed to do in its written Code. In this case, Iowa examined the Medicare Coverage Issues Manual, 35–82, which provided that "[p]ancreas transplants of any type are considered investigational and are, therefore, not covered under Medicare." [8] As a result, Iowa declined to cover Meusberger's pancreas transplant. Pursuant to the Iowa Code, Iowa did not arbitrarily grant some pancreas transplants and deny others. Rather, Iowa consistently and reasonably followed the federal Medicare guidelines as set forth in Iowa's written standards. The analysis need go no further. In this case, it does not matter how much expert testimony was produced on whether pancreas transplants should still be considered experimental or investigational in nature. That testimony is relevant only for the question of whether Medicare is correct in its characterization of pancreas transplants, an issue not before us today. Iowa did not write the Medicare Coverage Issues Manual. Iowa simply adopted these objective federal standards. Accordingly, I believe that the judgment of the district court should be reversed.

---

**8.** The majority opinion emphasizes the Medicare term "investigational," and attempts to distinguish this word from the term "experimental" as used in the Iowa Code. However, in the 1989 Department of Health and Human Services regulations, which set forth the criteria as to whether specific health care technologies were covered by Medicare, the regulation states that "[f]or Medicare coverage purposes, the term 'experimental' is used synonymously with the term 'investigational.'" 54 Fed.Reg. 4302 (Jan. 30, 1989). Thus, I do not find that Medicare's use of the term "investigational" changes my analysis of whether Iowa was reasonable in adopting a written standard which denies coverage for transplants that are deemed "experimental" by Medicare.