Sheri H. DEXTER, Plaintiff–Appellee,

v.

Leonard J. KIRSCHNER, Director of the Arizona Health Care Cost Containment System, Defendant,

and

Arizona Physicians, IPA, Inc., Defendant–Appellant.

Sheri H. DEXTER, Plaintiff–Appellee,

Leukemia Society of America, Arizona Chapter, Intervenor–Appellee,

v.

Leonard J. KIRSCHNER, Director of the Arizona Health Care Cost Containment System, Defendant–Appellant,

and

Arizona Physicians, IPA, Inc., Defendant.

Sheri H. DEXTER, Plaintiff–Appellee,

Leukemia Society of America, Arizona Chapter, Intervenor–Appellee,

v.

Leonard J. KIRSCHNER, Director of the Arizona Health Care Cost Containment System, Defendant–Appellant.

Nos. 91–15422, 91–15062 and 91–15409.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 17, 1992.

Decided Aug. 18, 1992.

As Amended on Denial of Rehearing and Rehearing En Banc Jan. 29, 1993.

Michael D. Curran and Logan T. Johnston, Johnston, Maynard, Grant & Parker, Phoenix, AZ, for defendant-appellant.

David K. Duncan, Meyer, Hendricks, Victor, Osborn & Maledon, P.A., Phoenix, AZ, for defendant-appellant Arizona Physicians IPA, Inc.

Heidi L. McNeil, Snell & Wilmer, Phoenix, AZ, for intervenor-appellee.

Before: SCHROEDER, LEAVY, and RYMER, Circuit Judges.

ORDER

The opinion filed on August 18, 1992, is amended as follows: footnote 2 on page 9863 of the slip opinion is replaced with the following:

With this amendment, Judges Leavy and Rymer have voted to deny the petition for rehearing. Judge Schroeder has voted to grant the petition for rehearing. The panel has voted to reject the suggestion for rehearing en banc.

The full court has been advised of the en banc suggestion and no judge of the court has requested a vote on it.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

## OPINION

LEAVY, Circuit Judge:

### FACTS AND PROCEEDINGS BELOW

We must decide whether the State of Arizona may, under Medicaid regulations and the Equal Protection Clause of the Fourteenth Amendment, choose to fund one type of bone marrow transplant but not another.

The facts are undisputed. Sheri Dexter, now deceased, suffered from leukemia. She qualified for benefits under Arizona's Medicaid program,[1] administered by the Arizona Health Care Cost Containment System (AHCCCS). One of the appellants, Dr. Leonard J. Kirschner, is the director of AHCCCS. The other appellant, Arizona Physicians IPA, Inc., is the health plan governed by AHCCCS in which Ms. Dexter was enrolled as a member. After Sheri Dexter's death, we granted the unopposed motion of the Leukemia Society of America, Arizona Chapter, to intervene as appellee.

The disease Sheri Dexter had is known as chronic myelogenous leukemia. The death rate is approximately 100% for individuals who are untreated. The required treatment is chemotherapy so extensive that it kills not only the cancer but also the patient's bone marrow. Therefore, a bone marrow transplant is a necessary part of the cure.

The only effective and proven transplant for chronic myelogenous leukemia is an allogeneic bone marrow transplant in which a matched donor's marrow is infused into the patient. An allogeneic bone marrow transplant is the standard of care for the treatment and cure of chronic myelogenous

leukemia; it is not experimental. Dexter's physicians estimated that with an allogeneic bone marrow transplant, she had a 60% to 90% chance of long-term, disease-free survival.

The average cost of an allogeneic bone marrow transplant at the University Medical Center in Tucson, Arizona, is $170,000. Dexter was denied Medicaid coverage because Arizona's Medicaid statute does not cover allogeneic bone marrow transplants.

The statute does, however, cover autologous bone marrow transplants. In an autologous bone marrow transplant, the patient's own bone marrow is removed and later readministered after chemotherapy. Patients with chronic myelogenous leukemia cannot be treated effectively with an autologous bone marrow transplant because their disease never goes into complete remission so that healthy bone marrow may be withdrawn. Thus, if reinjected with their own diseased marrow, the cancer would simply spread again.

Ms. Dexter filed this action seeking declaratory and injunctive relief. She alleged that the appellants' failure to approve Medicaid payment for an allogeneic bone marrow transplant violated various provisions of Title XIX and its implementing regulations, 42 C.F.R. § 430.00 *et seq.* The district court granted preliminary injunctive relief. The parties stipulated that the preliminary injunction be permanent and the district court entered a Final Judgment and Decree of Permanent Injunction.

■ Among other things, the court decreed that A.R.S. § 36–2907.F, the Arizona statute providing that autologous bone marrow transplants be covered by Medicaid, violates 42 U.S.C. § 1396 *et seq.* and is unconstitutional as applied to Ms. Dexter and others similarly situated.[2] In a separate order, the court awarded attorneys' fees of $25,000 and costs of $139.55 to Ms. Dexter.

---

**1.** Medicaid, established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396a–1396e, is a federal-state cooperative program that provides medical assistance to indigent people. The state pays the cost of medical service, which is reimbursed to the extent of 55% by the federal government. Each state writes its own plan, which must cover five categories: (1) inpatient hospi-

tal services; (2) outpatient hospital services; (3) laboratory and X-ray services; (4) skilled nursing services; and (5) physicians services. 42 U.S.C. § 1396d(a)(1)–(5) (1992).

**2.** This case is not moot. Although Ms. Dexter died during the initial stages of this appeal, the State of Arizona paid for the cost of the trans-

On appeal, the appellants argue that the district court erred in finding A.R.S. § 36–2907.F unconstitutional and that the award of attorney fees should be reversed.

Standard of Review

■ A district court's grant of permanent injunctive relief is reviewed for an abuse of discretion or application of erroneous legal principles. *Guadamuz v. Bowen*, 859 F.2d 762, 766 (9th Cir.1988); *Tollis Inc. v. San Bernardino County*, 827 F.2d 1329, 1331 (9th Cir.1987).

"Although the decision to grant or deny declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, is a matter initially committed to the discretion of the district court, on appeal we exercise our own 'sound discretion' to determine the propriety of the district court's grant or denial of declaratory relief. In effect, then, we review de novo the district court's ruling below." *Fireman's Fund Ins. Co. v. Ignacio*, 860 F.2d 353, 354 (9th Cir.1988) (citations omitted).

### DISCUSSION

I. *Whether The District Court Erred In Deciding A.R.S. § 36–2907.F Is Unconstitutional As Applied And Violates Federal Law*

Two Arizona statutes, A.R.S. §§ 36–2907.A.12 and 36–2907.F, make it clear that

Arizona covers autologous but not allogeneic bone marrow transplants. A.R.S. § 36–2907.A.12 provides in relevant part:

> [T]he following health and medical services shall be provided pursuant to provider contracts awarded under this article:
>
> . . . .
>
> Medically necessary kidney, cornea and bone transplants [3] and immunosuppressant medications for these transplants ... and, beginning October 1, 1988, medically necessary liver transplants and immunosuppressant medications for these transplants.... *No other organ transplants may be covered by the system unless specifically required by federal law* [.]

(Emphasis added).

A.R.S. § 36–2907.F, which the district court found unconstitutional, provides that:

> Notwithstanding subsection A of this section [of which A.R.S. § 36–2907.A.12 is a part], beginning October 1, 1989, the director shall provide medically necessary autologous bone marrow transplants to a person defined as eligible[.]

The appellants argue the district court clearly erred in finding A.R.S. § 36–2907.F unconstitutional as applied and in violation

---

plant pursuant to the order of the district court granting Dexter declaratory and mandatory preliminary injunctive relief. Because we hold that the State properly may withhold funds for an allogeneic bone marrow transplant under the current Arizona statute, the State is entitled to seek repayment of its Medicaid funds paid in error. *See, e.g., In re Estate of Rhodes*, 148 Misc.2d 744, 561 N.Y.S.2d 344 (1990); *Matter of Estate of Chavez*, 127 Mich.App. 430, 339 N.W.2d 35 (1983). The fact that Dr. Kirschner maintains he will not seek such repayment does not extinguish the State's entitlement to do so. *Cf. Z Channel Ltd. v. Home Box Office*, 931 F.2d 1338, 1340–41 (9th Cir.1991) (damages may be awarded if facts are proven entitling appellant to that relief, even if that relief was never requested), *cert. denied*, — U.S. —, 112 S.Ct. 875, 116 L.Ed.2d 780 (1992). The State is also entitled to seek recovery of the award of attorneys' fees entered against it.

Moreover, when the court entered a final judgment and decree of permanent injunction, it did not limit the individuals affected by the

order to Dexter alone. The court decreed that "defendants, their officers, agents, servants, employees, and others acting at their direction or on their behalf, are ordered to timely approve Medicaid payment for allogeneic bone marrow transplants and all related medically necessary procedures and expenses *for all eligible individuals* where such procedures are deemed medically necessary under the circumstances." No. CIV 90–1465 PHX RCB at 2 (December 18, 1990). The court further decreed that "defendants, their officers, agents, servants, employees, and others acting at their direction or on their behalf, will make the necessary financial arrangements in a timely manner for the funding of all costs associated with the transplant and care/treatment thereto *for such individuals as set forth above*." *Id.* at 2–3 (emphasis added).

3. A bone transplant is not the same as a bone marrow transplant. In a bone transplant, bone from another area (for example, the hip) is grafted in the treatment area in order to grow more bone. In a bone marrow transplant, the object is to grow red blood cells.

of federal law since (1) Dr. Kirschner had no discretion at all in this case and (2) federal law does not require coverage of the allogeneic bone marrow transplant. They claim that Dr. Kirschner did not act arbitrarily or unreasonably in denying Medicaid to Sheri Dexter; rather, he simply obeyed a valid state law.

### *"Medically Necessary" and A State's Discretion*

■ Once a state elects to participate in the Medicaid program, it must comply with federal requirements. *See* 42 U.S.C. § 1396a(a). Arizona participates in the Medicaid program through the AHCCCS. Pursuant to Medicaid, AHCCCS must provide assistance to pay for *medically necessary* inpatient hospital and physician's services for eligible persons. *See* 42 U.S.C. §§ 1396a(a)(10), 1396d(a)(1)–(5).

■ Sheri Dexter argued before the district court that her allogeneic bone marrow transplant was medically necessary and therefore, the denial of Medicaid coverage was in violation of federal Medicaid laws. The appellants argued that the "medically necessary" standard does not apply to organ transplants because under certain 1987 Congressional amendments the states were given discretion whether to cover those transplants.

The appellants are correct. The statute applicable to payments for organ transplants, 42 U.S.C. § 1396b(i) (1992), does not make payments mandatory. Section 1396b(i) states only what must occur in the event a state should decide, in its discretion, to pay for organ transplants:

> Payment under the preceding provisions of this section shall not be made—
>
> (1) for organ transplant procedures unless the State plan provides written standards respecting the coverage of such procedures and unless such standards provide that—
>
> (A) similarly situated individuals are treated alike[.]

We agree with the Eighth Circuit's explanation of section 1396b(i):

> [O]rgan transplants are a special situation. In 1985 and again in 1987 Congress amended the Medicaid statute to add a section governing payments for organ transplants. 42 U.S.C. § 1396b(i). The statute itself can be read as merely laying out additional standards the states must meet to receive federal funds for organ transplants, but the legislative history of the provision reveals that Congress intended the states to have discretion whether to include organ transplants in the Medicaid plans.

*Ellis v. Patterson,* 859 F.2d 52, 54–55 (8th Cir.1988) (footnote omitted).

The Eighth Circuit decided later that organ transplants need not be covered by Medicaid because organ transplants are not among the services that *must* be provided under Medicaid:

> States have some discretion in determining which medical services to cover under their Medicaid program. Other medical services, such as inpatient and outpatient hospital services, laboratory and X-ray services, skilled nursing facility services, and physician services must be provided. 42 U.S.C. § 1396d(a)(1)–(5). These required medical services must be provided whenever they are 'medically necessary.'

*Meusberger v. Palmer,* 900 F.2d 1280, 1282 (8th Cir.1990). The Eighth Circuit specifically held that organ transplants are excepted from Medicaid funding even when they are medically necessary because they are not among the listed required services: "This court has held that state Medicaid plans need not fund organ transplants, even when they are 'medically necessary.' States may elect which, if any, organ transplants to cover." *Id.* (citing *Ellis* ).

We adopt the Eighth Circuit's position that organ transplants are not among the "required medical services" listed in 42 U.S.C. § 1396d(a)(1)–(5) because the legislative history of 42 U.S.C. § 1396b(i) supports the position that Congress intended payments for organ transplants to be discretionary. *See Ellis,* 859 F.2d at 55 (quoting the legislative history). The Arizona legislature was within its discretion to fund

autologous, but not allogeneic, bone marrow transplants.[4]

## II. *Reasonableness*

    ■ The Eighth Circuit cautions that "once a state has adopted a policy to cover a category of organ transplants, it may not *arbitrarily or unreasonably* deny services to an otherwise eligible Medicaid recipient." *Meusberger,* 900 F.2d at 1282 (emphasis added). The district court decided that A.R.S. § 36–2907.F was arbitrary or unreasonable as a written policy.[5]

The district court found no reasonable basis for the differentiation in funding for autologous, as opposed to allogeneic, bone marrow transplants. The court stated:

> It is the court's understanding that although the procedures are somewhat different, the principles and goals behind them are the same. Both types of bone marrow transplants seek to cure diseased bone marrow with healthy bone marrow.... Both procedures have both similar and different benefits and drawbacks....
>
> The Court perceives no reasonable basis for the Arizona statute's differentiation between funding for [autologous bone marrow transplants] and denial of funding for [allogeneic bone marrow transplants]. *There appears to be considerable and substantial overlap in the leukemia type diseases these two procedures treat.* Furthermore, although they have some different ele-

ments, the procedures themselves appear to be very similar.

Order, No. CIV 90–1465 PHX RCB, at 8–9 (emphasis added).

In contrast to the district court's observation, however, the parties had stipulated that:

> Autologous bone marrow transplants and allogeneic bone marrow transplants are *different* procedures used to treat *different* diseases and have *different* outcomes and *different* side effects.

Undisputed Statement of Facts, No. CIV 90–1465 PHX RCB, para. 61. The district court stated:

> The Court adopts the parties' stipulated facts, with the exception of paragraph 61. It is clear from the testimony presented that paragraph 61 is a mistaken simplification. Instead the Court will rely on Dr. Azar's testimony, summarized in this instant order.

Order, No. CIV 90–1465 PHX RCB, at 1, n. 1.

"In general, stipulations are not to be lightly set aside." *In re Lenox,* 902 F.2d 737, 739 (9th Cir.1990) (bankruptcy case). We recognize there may be special circumstances in which a lower court should exercise its equitable power with respect to stipulations, but first that court must find that "special circumstances [ ] exist and ... must take the maximum steps reasonably practical to put the other party to the stipu-

---

**4.** The parties stipulated as follows:

    The State Plan for Arizona's Title XIX program, AHCCCS, has been approved by the federal government. The State Plan sets forth the written standards by which AHCCCS covers organ transplants. The federal government has made no complaint about the distinction made by Arizona between coverage of the two bone marrow transplants.

    Prior to the 1989 legislation that made autologous bone marrow transplants a covered procedure under AHCCCS, a Joint Legislative Study Committee on Transplants (the Committee) reviewed past and present AHCCCS coverage of organ transplants, state and federal funding expended for transplants, other states' policies regarding transplant coverage, medical testimony regarding transplant coverage, medical testimony regarding the medical perspective on organ transplants, and a legal

analysis of the legal standards affecting transplant coverage. After reviewing this material, the Committee recommended that the Legislature expand current coverage of transplants under AHCCCS to include autologous bone marrow transplants. Some Committee members suggested that all medically necessary organ transplants be covered under AHCCCS. *This position has not yet been adopted by the Legislature.* (Emphasis added.)

**5.** Arizona has provided the required written standards for coverage of organ transplants in general in A.R.S. § 36–2907.A.12, and for bone marrow transplants in particular in A.R.S. § 36–2907.F. The latter standard provides for autologous bone marrow transplants, while the former standard provides that unless federal law requires it, no other organ transplants are covered by the Arizona system.

lation in a position close to what the stipulation gave it." *Id.* at 740.[6]

Here, the district court put the parties in the opposite position they would have had under the stipulation. This was unfair to the appellants because the stipulation made it clear that patients who need allogeneic bone marrow transplants are not similarly situated with patients who need autologous bone marrow transplants.

Moreover, Dr. Catherine Azar's testimony, if accepted in place of the stipulation, does not unequivocally support the district court's conclusion. Dr. Azar, one of Sheri Dexter's treating physicians and the one who performed her allogeneic bone marrow transplant, testified that paragraph 61 was "a little too simple. I mean it's correct in some respects and incorrect in other respects." Dr. Azar then went on to explain that "the principle of both transplants is exactly the same:"

> the principle of doing any kind of bone marrow transplant is that you destroy the patient's bone marrow, and along with it you destroy their cancer. Then you rescue them with bone marrow, whether it be their own bone marrow that you stored or it be bone marrow from another person.

On cross examination, however, Dr. Azar admitted that she had earlier agreed that autologous bone marrow transplants and allogeneic bone marrow transplants are two different medical procedures.[7]

■ Dr. Azar's testimony demonstrates that the district court's conclusion that "[t]here appears to be considerable and substantial overlap in the leukemia type diseases these two procedures treat" is based on contradictory testimony from the same witness. Nonetheless, it was a basis for the district court's conclusion that the Arizona statute was unreasonable[8] and that Sheri Dexter was being treated differently from other "similarly situated" individuals. This conclusion would not follow if the stipulation that "autologous bone marrow transplants and allogeneic bone marrow transplants are *different* procedures used to treat *different* diseases and have *different* outcomes and *different* side effects" had been enforced.

6. In *Lenox,* we remanded to the bankruptcy court to enforce the stipulation unless that court found special circumstances to justify its action in opposition to the stipulation. *Id.*

7. Dr. Azar's entire testimony was quite confusing:
Q. And my question is—you gave a deposition yesterday afternoon, did you not?
A. Yes.
Q. Less than 24 hours ago. And my question to you was, "Do you agree with me that the autologous bone marrow transplant and the allogeneic bone marrow transplant are two different medical procedures?"
Answer
"Definitely."
Question
"And tell me why you say that?"
Answer
"Because first of all you use them for different diseases and second of all—I mean they are not completely different because basically you wind up with a patient who has a lot of same side effects, but they are different procedures used for different diseases and they have different side effects and they have different outcomes. They are similar."
Was that the answer you gave me yesterday?
A. Yes.

But when asked immediately thereafter if she wished to clarify, Dr. Azar gave this answer:
Well somewhere later along the line I know I said that the principle of both bone marrow transplant procedures was the same. I suppose that I was simplifying it a little bit too much. But the principle of both procedures is exactly the same, but they are used for different diseases and they do have different side effects. But the principle is essentially the same. It is the same. It's not essentially the same.

8. Another basis for the court's finding of unreasonableness was cost:
Finally, it is unreasonable to fund a less recognized, and sometimes less helpful procedure, than the more traditional treatment, especially considering that the costs are similar. Order, No. CIV 90–1465 PHX RCB at 9 (footnote omitted). However, it was the cost of the additional procedure, not the difference in cost between the transplants in question that Arizona would save by funding one transplant but not the other. The Constitution does not empower a federal court to second-guess state officials charged with the difficult task of allocating limited public welfare funds. *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970).

## III. *Equal Protection*

The issue we decide with respect to equal protection is if the phrase "similarly situated" in 42 U.S.C. § 1396b(i) means (1) all patients with the same general disease; or (2) all patients who can be effectively treated by the same organ transplant procedure. We conclude that the latter meaning is correct.

The Leukemia Society asks generally whether all leukemia patients are being treated equally:

> The Arizona statute discriminates against CML patients [i.e., those patients with chronic myelogenous leukemia] by prohibiting them from obtaining the only effective and proven treatment and cure—an allogeneic bone marrow transplant. Meanwhile, the statute guarantees to the victims of types of leukemia that *can* be treated with autologous bone marrow transplants the medical treatment needed to save their lives. Because the Arizona statute treats similarly situated individuals differently, the statute is in violation of the federal Medicaid statutes. *See* 42 U.S.C. § 1396b(i).

> Appellant Kirschner confuses the "similarly situated" issue by focusing on the differences between the two types of bone marrow transplant procedures. The autologous and allogeneic bone marrow transplants are only different procedures to achieve the same service— namely bone marrow transplants—a service for which AHCCCS has decided to provide coverage.

Intervenor–Appellee's Brief at 14–15 (footnotes omitted). The district court drew the same conclusion: "The Court concludes that it is a denial of equal protection to provide treatment *of similar types of leukemia* with one form of bone marrow transplant to the exclusion of another." Order, No. CIV 90–1465 PHX RCB at 12 (emphasis added).

However, the record does not indicate that there are "types of leukemia" that can be treated with autologous bone marrow transplants. Instead, other diseases are treated by autologous bone marrow transplants:

Candidates for autologous bone marrow transplants primarily have (1) malignant lymphoma and (2) certain solid tumors such as neuroblastoma, testicular cancer and breast cancer. Candidates for allogeneic bone marrow transplants primarily have leukemia. Allogeneic bone marrow transplant is standard treatment for both acute and chronic leukemia.

Undisputed Statement of Facts, No. CIV 90–1465 PHX RCB, para. 46.

The meaning the district court attributed to "similarly situated" would lead to Medicaid funding of almost all organ transplants. As the appellants point out by way of analogy, all cancer patients are not the same and cannot be treated by the same procedures. For example, some cancer patients may benefit from a liver transplant, funded by AHCCCS, while other may require a pancreas transplant, not funded by AHCCCS. These cancer patients are not similarly situated; they need different transplants.

We conclude that "similarly situated" means all patients who can be treated effectively by the same organ transplant procedure. Therefore, Sheri Dexter was not unreasonably denied a covered service. She was denied medical assistance because the only procedure that could help her, an allogeneic bone marrow transplant, was not covered by AHCCCS. Dr. Kirschner simply carried out the wishes of the Arizona legislature, as directed by Congress.

We observe that this case deals with "state regulation in the social and economic field, not affecting freedoms guaranteed by the Bill of Rights, and claimed to violate the Fourteenth Amendment only because the regulation results in some disparity" in Medicaid payments for organ transplants in Arizona. The Supreme Court states:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical

nicety or because in practice it results in some inequality.'

*Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (involving statute that provides Aid to Families With Dependent Children) (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)). Moreover, " '[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' " *Id.* (quoting *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)).

In this case, when the Arizona legislature decided in 1989 to fund autologous bone marrow transplants, it did so knowing the University of Arizona Medical Center could provide such transplants. No corresponding program for allogeneic bone marrow transplants existed in Arizona at the time: Arizona previously had covered those transplants at an out-of-state facility. This reasonably justifies Arizona's decision in 1989 not to fund allogeneic bone marrow transplants. Arizona's decision not to fund the additional expenditures despite the similarity in cost for both types of bone marrow transplants was also rational.

For these reasons, we reverse the decision of the district court. The State had a rational basis for its decision not to fund allogeneic bone marrow transplants and Dr. Kirschner was within his authority not to fund Sheri Dexter's transplant with AHCCCS funds.

## IV. *Attorney Fees*

The district court awarded Sheri Dexter attorneys' fees because 42 U.S.C. § 1988 provides that

> the court, in its discretion, may allow the *prevailing party,* other than the United States, a reasonable attorney's fee as part of the costs.

(Emphasis added.) The district court's award of attorney fees to the appellee is reversed because that party is not the prevailing party. No fees or costs are awarded for this appeal.

REVERSED.

SCHROEDER, Circuit Judge, dissenting:

I respectfully dissent. The controlling statutory language requires that once a state decides to pay for any organ transplant, it must do so for all persons "similarly situated." 42 U.S.C. § 1396b(i)(1)(A). The district court in this case found that the plaintiff, Sheri Dexter, who required a bone marrow transplant using the allogeneic procedure, was similarly situated to a patient who could receive a bone marrow transplant by means of the autologous procedure. The finding is supported by the testimony of the expert witness who said that the operations are functionally the same. The district court's finding is independently and amply supported by the undisputed facts that the organ being replaced in both procedures is the same, and that the costs and availability of both procedures are similar. As the parties have recognized, forty-six states and the District of Columbia provide Medicaid coverage for bone marrow transplants, and all cover the allogeneic procedure.

The majority's opinion gives controlling weight to one paragraph of the parties' stipulation which states that the allogeneic and autologous surgical procedures are "different." The majority concludes that "similarly situated" means all patients who can be treated equally effectively by the same organ transplant procedure. This is a very narrow reading of the term "similarly situated." It interprets the statute to mean that the state need only provide organ transplants to persons who have identical physical conditions caused by identical diseases. This is not what Congress intended. Rather, the statute requires a practical look at the totality of the situation.

The only justification for the Arizona Legislature's decision to provide only for autologous transplants was that, at the time the Arizona statute was enacted, it was the only procedure available in Arizona. Since that situation no longer exists, and both procedures are available on a comparable basis, there is no longer any justification for making this distinction. The irrationality of providing for autolo-

gous but not allogeneic transplants is further illustrated by the parties' stipulation that allogeneic transplants are far superior to autologous bone marrow transplants in providing curative treatment. Indeed federal law expressly regards the allogeneic procedure as the preferable procedure. Under Medicaid regulations, when a matched donor is available to a person who could also receive an autologous transplant, the allogeneic transplant, not the autologous is to be performed. Bone Marrow Transplantation, 54 Fed.Reg. 34555, 34566–67 (1989).

The majority's result does not appear to be supported by any authority. Much of the organ transplant litigation involves whether particular transplant procedures are "nonexperimental" and thus covered by state Medicaid plans. *See Meusberger v. Palmer*, 900 F.2d 1280 (8th Cir.1990); *Montoya v. Johnston*, 654 F.Supp. 511 (W.D.Tex.1987). As the parties have stipulated, the procedures at issue in this case are not experimental. The proposed majority result would appear to be in tension with the Fourth Circuit's decision in *Todd by Todd v. Sorrell*, 841 F.2d 87, 89 (4th Cir.1988), which effectively rejected a legislative decision to fund liver transplants caused by one disease and not another. *See also Simpson v. Wilson*, 480 F.Supp. 97, 100 (D.Vt.1979) (denial of service solely because of the diagnosis, type of illness, or condition held contrary to the federal regulation).

In my view the district court reached a sensible, compassionate, and legally correct result. I would affirm.