Brenda OHLSON, Plaintiff–Appellant,

v.

Alan WEIL, Executive Director of the Colorado Department of Health Care Policy & Financing, in his official capacity, and the Colorado Department of Health Care Policy & Financing, Defendants–Appellees.

No. 96CA0395.

Colorado Court of Appeals,
Div. III.

June 12, 1997.

As Modified on Denial of Rehearing
July 17, 1997.

Certiorari Denied April 27, 1998.

Legal Aid Society of Metro Denver, Peter Komlos–Hrobsky, Denver, for Plaintiff–Appellant.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Wade Livingston, First Assistant Attorney General, Denver, for Defendants–Appellees.

Opinion by Judge CASEBOLT.

In this action concerning coverage under the Colorado Medical Assistance Act (Medicaid), plaintiff, Brenda Ohlson, appeals the district court's order in favor of defendants, Colorado Department of Health Care Policy and Financing (Department), and its executive director, Alan Weil, which upheld a determination by an Administrative Law Judge (ALJ) that Ohlson's medically necessary

body brace was not a covered expense. We reverse and remand with directions.

Ohlson, who is 35 years old, suffers from spinal muscular dystrophy and is wheelchair-bound. She requires a molded plaster body brace in order to sit up and breathe properly in her wheelchair. The brace is not surgically implanted, but rather is clamped to the outside of her body.

The brace requires replacement approximately once per year. Without the brace, Ohlson will regress to a slumped position and will eventually need mechanical assistance to breathe. Neither Ohlson's eligibility for Medicaid nor the medical necessity of the body brace is disputed here.

In 1994, Ohlson's treating physician submitted a request for Medicaid coverage for the brace. The Department denied the request, relying upon § 26-4-302(1)(f), C.R.S. (1996 Cum.Supp.), which provides optional, non-federally mandated coverage for "prosthetic devices, except that such devices shall be limited to surgically implanted devices." The Department also concluded that the brace did not meet the definition of "durable medical equipment" under Department of Health Care Policy & Financing Regulation § 8.590, 10 Code Colo. Reg. 2505-10 (1994) (Section 8.590) and thus was not a covered expense.

The Department's decision was upheld by the ALJ and by the district court. Ohlson now appeals the district court's order.

## I.

Ohlson first contends that the Department's regulations covering durable medical equipment, in effect at the time she brought her claim, required coverage for her body brace. We agree.

█ The Department bears the burden, by a preponderance of the evidence, to establish the basis of the ruling being appealed. *See* Department of Social Services Regulation No. 8.058.54, 10 Code Colo. Reg. 2505-10.

█ A reviewing court may reverse an administrative agency's determination if the court finds that the agency acted in an arbitrary and capricious manner, made a deter-

mination that is unsupported by the evidence in the record, erroneously interpreted the law, or exceeded its constitutional or statutory authority. Section 24-4-106(7), C.R.S. (1988 Repl.Vol. 10A); *McClellan v. Meyer*, 900 P.2d 24 (Colo.1995).

█ Interpretation of a regulation by the agency charged with its enforcement is generally entitled to great deference. The agency interpretation is to be accepted if it has a reasonable basis in law and is warranted by the record. *See Halverstadt v. Department of Corrections*, 911 P.2d 654 (Colo.App.1995).

█ Here, at the time Ohlson sought coverage in 1994, the Department's regulations defined durable medical equipment as "equipment which can withstand repeated use and which generally does not have a value to the patient in the absence of an illness or injury." The parties also agree that the regulation required such equipment to be usable in the patient's home. Section 8.590.

In its final agency decision rejecting coverage for the brace under this regulation, the Department stated that: "Although Section 8.590 ... does not include or exclude specific types of equipment, the rule does clearly imply that its applicability is limited to equipment which is needed in the home for a finite period of time, and where it is determined that purchase of the equipment is less costly than renting."

The Department therefore concluded that: "It is clearly not the intent of this rule to cover items such as the ... brace ... which is clearly required for the rest of [Ohlson's] life, and which is not a piece of equipment which may be rented."

The Department provides no support for its interpretation of § 8.590, and we find none in the plain language of the regulation or in the record.

First, we fail to discern how the regulation can be read to exclude coverage of all equipment except that which is needed on a temporary basis. The regulation states, in part, that durable medical equipment must be able to "withstand repeated use" and must not be useful in the absence of an "illness or injury."

These phrases do not contain a temporal limitation, and the inclusion of the term "illness" suggests coverage of afflictions that may be permanent. Moreover, the common meaning of the word "durable" is long-lasting. *See Webster's Third New International Dictionary* 703 (1986).

We reject the Department's position that a device is not durable medical equipment unless it is cheaper to buy than to rent, and we reject as without consequence the fact that Ohlson's brace is not rentable. The Department's reading would lead to the irrational result that equipment which would otherwise meet the requirements of § 8.590 would nonetheless be uncovered unless the total rental cost exceeded its purchase price.

Moreover, the Department's stated interpretation of § 8.590 is belied by its coverage, as durable medical equipment, of such items as wheelchairs, wheelchair seating devices, and other wheelchair attachments. There is no evidence in the record to suggest that these items are only covered when needed on a temporary basis or when their purchase price is less than their rental cost.

Thus, we conclude that the Department's interpretation lacks a reasonable basis in law and is unwarranted by the record. Further, even if we accept the Department's interpretation of § 8.590, basing coverage on whether an individual's affliction is temporary or on the rental versus purchase price of equipment would be arbitrary and capricious.

However, in affirming the final agency decision, the district court did so on a basis different from that relied on by the Department in the final agency decision. The court applied rules of statutory interpretation and concluded that, because the common, ordinary meaning of "body brace" falls within the definition of the word "prosthetic" and not "durable medical equipment," the more specific coverage definitions regarding prosthetics must control. We do not agree with the district court's conclusion.

■ First, we note that a special or specific provision of a statute prevails over a general provision only if the provisions are in conflict and the conflict is irreconcilable. *See* § 2–4–205, C.R.S. (1980 Repl.Vol. 1B); *see*

*also In re M.S. v. People,* 812 P.2d 632 (Colo.1991). Such is not the case here.

■ Under federal law, acknowledged to be applicable here in the absence of a pertinent state definition, a prosthetic device is defined as a replacement, corrective, or supportive device which artificially replaces a missing portion of the body, prevents or corrects a physical deformity or malfunction, or supports a weak or deformed portion of the body. *See* 42 C.F.R. § 440.120(c) (1996).

The fact that Ohlson's brace fits both the state definition of durable medical equipment and the federal definition of a prosthetic device does not create an irreconcilable conflict. Nothing in the federal or state Medicaid laws precludes an item of medical equipment from falling into more than one category. Rather, federal courts confronting this issue have concluded that a single device may be covered both as durable medical equipment and as a prosthetic device. *See Fred C. v. Texas Health & Human Services Commission,* 924 F.Supp. 788 (W.D.Tex. 1996) (an augmentative communication device, enabling severely speech impaired persons to communicate verbally, was covered both as durable medical equipment and as a prosthetic device); *see also Charpentier v. Kizer,* No. 2–90–758–EJG, 1990 WL 252191 (E.D.Cal. Nov.19, 1990) (a wheelchair may be classified both as a prosthetic device and as durable medical equipment).

Further, as stated above, the record reveals that the Department covered wheelchairs, wheelchair seating devices, and attachments as durable medical equipment, items also falling within the definition of a prosthetic device.

Therefore, because Ohlson's body brace is suitable for use and is used in Ohlson's home, has an obvious medical purpose, withstands repeated use, and would not be useful in the absence of her illness, it meets the requirements of § 8.590, and must be covered as durable medical equipment.

We note, however, that since the district court's decision, the Department has rewritten its durable medical equipment regulations. The new regulations now address prosthetic devices under the heading of dura-

ble medical equipment, but also state that "special braces" which "enable a patient ... to sit" are not covered except for children under 21 years of age. Department of Health Care Policy & Financing Regulation Nos. 8.591.02O & 8.593.04B, 10 Code Colo. Reg. 2505–10 (1996).

Ohlson does not request coverage for her body brace under the modified regulations and we offer no opinion concerning whether these new regulations preclude such coverage.

Because we conclude that Ohlson's brace must be covered as durable medical equipment up until June 1, 1996, the Department must compensate Ohlson for the cost of her brace to that date, the effective date of the Department's changed regulations.

Further, in view of our conclusion, we need not address Ohlson's alternative argument that the Department's regulations prior to the 1996 modifications and/or the State Medicaid Plan also required coverage of her brace as a prosthetic device, whether it was surgically implanted or not.

## II.

As to coverage after June 1, 1996, Ohlson maintains that § 26–4–302(1)(f), C.R.S. (1996 Cum.Supp.) conflicts with federal law because it precludes coverage for non-surgically implanted prosthetic devices for otherwise eligible individuals. Because we determine that the district court did not correctly apply relevant federal authority, we must remand this matter for further consideration.

■ Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v (1992), commonly known as the Medicaid Act, is a joint federal-state funding program designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of medical care. 42 U.S.C. § 1396 (1997); *Hern v. Beye,* 57 F.3d 906 (10th Cir.1995).

■ Although a state's participation is voluntary, once a state chooses to participate in the program, it must comply with federal statutory and regulatory requirements. *See*

*Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985).

Colorado participates in Medicaid through the Colorado Medical Assistance Act, § 26–4–101, et seq., C.R.S. (1996 Cum.Supp.). States participating in Medicaid must provide certain mandatory services under a state medical assistance plan. *See* 42 U.S.C. §§ 1396a(a)(10)(A) & 1396d(a)(1) to (5), 1396a(a)(17) and 1396a(a)(21) (1992); 42 C.F.R. §§ 440.210 & 440.220 (1996). States may also, at their option, provide certain additional services, one of which encompasses prosthetic devices. *See* 42 U.S.C. §§ 1396a(a)(10)(A) & 1396d(a)(12).

As to both optional and required services, the federal regulations provide that a covered service must "be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b) (1996). A state, however, "may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d) (1996); *see also DeLuca v. Hammons,* 927 F.Supp. 132 (S.D.N.Y.1996).

Finally, a state may not "arbitrarily deny or reduce the amount, duration, or scope of a required service under §§ 440.210 and 440.220 solely because of the diagnosis, type of illness, or condition [of the recipient]." 42 C.F.R. § 440.230(c).

Ohlson contends that the state statute's limitation of coverage to prosthetic devices which are surgically implanted violates 42 C.F.R. § 440.230(c) in that it does so solely because of her diagnosis, type of illness, or condition. We disagree.

Some courts, despite the clear language of the regulation limiting its applicability to "required services," nonetheless have applied this regulation to optional services. *See Weaver v. Reagen,* 886 F.2d 194 (8th Cir. 1989); *Visser v. Taylor,* 756 F.Supp. 501 (D.Kan.1990); *Simpson v. Wilson,* 480 F.Supp. 97 (D.Vt.1979).

Other courts have not. *See Hines v. Sheehan,* No. 94–326–P–H, 1995 WL 463685 (D.Me. July 26, 1995); *Dodson v. Parham,* 427 F.Supp. 97 (N.D.Ga.1977); *Ledet v. Fischer,* 638 F.Supp. 1288 (M.D.La.1986).

■ We choose to honor the plain language of the regulation and, accordingly, conclude that § 440.230(c) is inapplicable to prosthetic devices, an optional service.

■ Nevertheless, the provisions of 42 C.F.R. § 440.230(b) remain applicable. To satisfy that regulation, state coverage only for surgically implanted prosthetic devices must be "sufficient in amount, duration, and scope" reasonably to achieve the purpose of prosthetic devices in the scheme of the federal program. *See Ledet v. Fischer, supra.*

■ Courts have developed two general tests to determine whether a service offered only in part, or with other limitations, is nonetheless sufficient in "amount, duration, and scope." First, a limited service meets the sufficiency requirements of the federal regulations if the service is distributed in a manner bearing a rational relationship to the underlying federal purpose of providing the service to those in greatest need of it. *See White v. Beal,* 555 F.2d 1146 (3d Cir.1977) (discussing earlier version of amount, scope, and duration regulations); *see also Ledet v. Fischer, supra* (if a state chooses to provide an optional service, the state may limit it to those most medically needy); *Anderson v. Director, Department of Social Services,* 101 Mich.App. 488, 300 N.W.2d 921 (1980) (exclusion of root canal treatment did not violate § 440.230(b) because dental services were provided to those in greatest medical need).

Second, a limited service is sufficient in amount, duration, and scope if it adequately meets the needs of "most" individuals eligible for Medicaid who have a medical need for the particular Medicaid service. *See Charleston Memorial Hospital v. Conrad,* 693 F.2d 324 (4th Cir.1982) (limit on the number of days the state would cover in-hospital care met federal regulations because the coverage nonetheless met the medical needs of most recipients); *Curtis v. Taylor,* 625 F.2d 645 (5th Cir.1980) (limiting reimbursement for physician visits to three per month met the purpose of the required service because all Medicaid recipients were treated equally and most did not need more than three visits per month); *Ralabate v. Wing,* No. 93–CV–0035E(H), 1996 WL 377204 (W.D.N.Y. June 27, 1996) (defendant provided medical assistance in the form of custom wheelchairs to most eligible Medicaid patients); *Sobky v. Smoley,* 855 F.Supp. 1123 (E.D.Cal.1994); *King v. Sullivan,* 776 F.Supp. 645 (D.R.I. 1991) (intermediary care service sufficient because most eligible recipients were offered the service).

Here, the General Assembly elected to cover prosthetic devices as an optional service under the Medicaid statute, but with the restriction that "such devices shall be limited to surgically implanted devices." Section 26–4–302(1)(f), C.R.S. (1996 Cum.Supp.). In contrast to Colorado's Medicaid statute, federal regulations do not contain any limit on coverage of prosthetic devices based on whether the devices are surgically implanted.

The district court concluded that this legislative scheme satisfied § 440.230(b) because it provided "service of sufficient scope" consistent with the scheme of the federal program. In making this determination, however, the court did not apply the tests and interpretations of § 440.230(b), as outlined above.

The court also concluded that, in limiting coverage of prosthetic devices to those which are surgically implanted, the Department satisfied § 440.230(c) because it did not arbitrarily exclude individuals from Medicaid coverage based on diagnosis, type of illness, or condition. However, inasmuch as we have concluded that § 440.230(c) is inapplicable to optional services such as prosthetic devices, the court's ruling may not stand on this ground.

The Department's only relevant statement concerning these issues is that the state restriction on prosthetics service can "easily be sustained on the theory that the legislature found that persons who need surgically implanted prosthetics have a greater medical need than those who need devices that are not surgically implanted."

However, there is no evidence in the record to support this assertion, and we have found no pertinent legislative history that would support the Department's position.

Under the Department's interpretation of federal law and regulations, any inquiry into

the sufficiency of service under § 440.230(b) is unnecessary. The Department asserts that, because a state is not required to offer an optional service at all, federal authority gives a state discretion to limit optional services in any way it chooses, without regard to medical necessity. We disagree.

In support of its position, the Department cites *Dexter v. Kirschner*, 972 F.2d 1113 (9th Cir.1992), in which the court found that a state had discretion to deny medically necessary bone marrow transplants. The Department's reliance on *Dexter* is misplaced.

In *Dexter*, the court specifically relied on § 1396b(i) of the Medicaid Act addressing organ transplants, and did not discuss the federal laws and regulations at issue in this case, *i.e.*, those applicable to optional services in general. Further, both the Fourth and Eleventh Circuits have rejected the *Dexter* court's interpretation of § 1396b(i). *See Pittman v. Secretary, Florida Department of Health & Rehabilitative Services*, 998 F.2d 887 (11th Cir.1993); *Pereira v. Kozlowski*, 996 F.2d 723 (4th Cir.1993).

The Department further argues that the provisions of 42. C.F.R. § 440.230(d) which authorize a state to "place appropriate limits on a service based on such criteria as medical necessity" authorize the surgical implantation limitation. Again, we disagree.

The Department has provided no evidence that the statutory limitation is based upon a finding that non-surgically implanted prosthetic devices are not medically necessary and, in fact, concedes here that Ohlson's body brace is medically necessary. The Department therefore has failed to show that Colorado's refusal to cover all non-surgically implanted prosthetic devices is an appropriate limit based on medical necessity under § 440.230(d).

Under these circumstances, we conclude that the district court must conduct further inquiry to determine whether § 26–4–302(1)(f) meets the applicable federal laws and regulations using the tests set forth above. Hence, we remand to the district court with instructions to determine whether § 26–4–302(1)(f) satisfies applicable federal authority.

III.

Ohlson next argues that, because there is a conflict between federal law and the coverage specified in § 26–4–302(1)(f), C.R.S. (1996 Cum.Supp.), a reconciliation provision in the Colorado Medicaid statute, § 26–4–105, C.R.S. (1996 Cum. Supp) requires the Department to follow federal law in implementing its state Medicaid plan. Depending upon whether the district court concludes that the limitation on coverage for prosthetics to those that are surgically implanted meets the federal requirements that an optional service must be sufficient in amount, duration, and scope reasonably to achieve its purposes, this statutory provision may have applicability on remand. Accordingly, we address its application here.

Section 26–4–105 states: "Nothing in this article shall prevent the state department from complying with federal requirements for a program of medical assistance in order for the state of Colorado to qualify for federal funds under Title XIX of the social security act and to maintain a program within limits of available appropriations."

If federal law conflicts with the Colorado Medicaid statute, the reconciliation provision gives the Department the power to disregard the state statute in favor of federal law.

Therefore, upon remand, if the district court determines that § 26–4–302(1)(f) is in conflict with federal law, under the reconciliation provision the Department must provide prosthetic device service in compliance with federal law and regulations as expressed in this opinion.

The order is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

HUME and NEY, JJ., concur.