WILLIAM A. DAVIS *v.* STATE OF MARYLAND, ET AL.

[No. 26, April Term, 1944.]

*Decided June 13, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and BAILEY, JJ.

*Henry L. Stanford, Jr.,* with whom was *J. Carroll Sullivan* on the brief for the appellant.

*J. Edgar Harvey, Assistant Attorney General,* with whom was *William C. Walsh, Attorney General,* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the court.

Dr. William A. Davis, of Baltimore, brought this suit under the Uniform Declaratory Judgments Act to obtain a judicial declaration that the statute passed by the Legislature of Maryland in 1943 for the regulation of advertising by physicians and surgeons is unconstitutional. Acts of 1943, Ch. 600, Code 1943 Supp., Art. 43, Secs. 144A, 144B, 144C.

The statute provides that no physician or surgeon in this State shall advertise except as follows: (a) He may use a personal professional card, not larger than 3½ by 2 inches, upon which may be printed his name, title, address, specialty, telephone number, and office hours; (b) he may mail to any of his bona fide patients a removal notice, not larger than 5 by 7 inches, containing his name, title, specialty, telephone number, office hours, and his old and new addresses; and (c) he may exhibit on the door or wall of the building in which he practices not more than two signs on which shall be placed his name and title or degree, the letters of which shall not exceed 3 inches square, and he may also exhibit such sign on the door of his office. Any physician or surgeon who advertises or solicits in any other manner, whether by mail, card, newspaper, pamphlet, radio or otherwise, shall be guilty of a misdemeanor, and on conviction thereof shall be fined not less than $50 and not more than $300 for each offense. The statute expressly provides that a violation of the statute shall constitute unprofessional conduct, and

the license of any physician or surgeon guilty of such violation shall be subject to revocation.

Complainant alleges that, after graduating in both pharmacy and medicine from the University of Maryland, he was licensed to practice medicine in this State in 1898; that he was teacher at the Baltimore Medical College from 1898 to 1905; that he took a post graduate course in medicine at the Johns Hopkins University and also did clinical work in England, France, and Germany; that he has been practicing in an honorable manner, and the treatments used by him, particularly for venereal diseases, are those approved by the American medical profession; that he has been advertising in a Baltimore newspaper and in the telephone directory, but since he stopped advertising after the passage of the Act of 1943 his receipts fell more than 50% below those of previous years; that the statute is unconstitutional because (1) it is not a valid exercise of the police power of the State, but deprives him of his property without due process of law in contravention of Article 23 of the Maryland Declaration of Rights and the Fourteenth Amendment to the Constitution of the United States, and (2) it is arbitrary and discriminatory and deprives him of the equal protection of the laws guaranteed by the Fourteenth Amendment.

It was questioned by the State Board of Medical Examiners whether complainant could use a declaratory judgment proceeding to test the constitutionality of the statute. The early conception of the courts was that they were a branch of the government created to redress private wrongs and to punish for the commission of crimes. The Uniform Declaratory Judgments Act was adopted by the State of Maryland in 1939. Acts of 1939, Ch. 294, Code, 1939, Art. 31A. The primary purpose of this Act is to relieve litigants of the rule of the common law that no declaration of rights may be judicially adjudged unless a right has been violated, and to render practical help in ending controversies which have not reached the stage where other legal relief is immediately

available. *De Charette v. St. Matthews Bank & Trust Co.,* 214 Ky. 400, 283 S. W. 410, 50 A. L. R. 34. Section 1 of the Uniform Act explicitly declares that the existence of another adequate remedy shall not preclude a judgment for declaratory relief "in cases where it is appropriate." However, we have decided that the Act is designed to supplement, not to supercede, existing remedies at law and in equity, and accordingly where an immediate cause of action exists for which one of the existing remedies is available and adequate, a proceeding for a declaratory judgment is not appropriate within the contemplation of the Act. *Caroline Street Permanent Building Ass'n v. Sohn,* 178 Md. 434, 444, 13 A. 2d 616. For instance, we held that the Legislature did not intend that a declaratory judgment proceeding should take the place of the ordinary action for damages for breach of contract. *Porcelain Enamel & Mfg. Co. v. Jeffrey Mfg. Co.,* 177 Md. 677, 11 A. 2d 451. Likewise, we held that the Circuit Court cannot decide by declaratory judgment whether a will should be probated, for the Orphans' Court is vested with jurisdiction to admit wills to probate. *Morgan v. Dietrich,* 179 Md. 199, 16 A. 2d 916.

However, if a person is directly affected by a statute, there is no reason why he should not be permitted to obtain a judicial declaration that the statute is unconstitutional. It is true that a court of equity has power to restrain the enforcement of a void statute or ordinance at the suit of a person injuriously affected. *City of Havre de Grace v. Johnson,* 143 Md. 601, 123 A. 65; *Spann v. Gaither,* 152 Md. 1, 136 A. 41, 50 A. L. R. 620; *Jewel Tea Co. v. Town of Bel Air,* 172 Md. 536, 192 A. 417. But in this case complainant is affected by the Act of 1943 and he is entitled to apply for a declaratory judgment under the Uniform Act, rather than run the risk of being subjected to criminal prosecution, and possibly having his license revoked. The distinctive characteristic of a declaratory judgment is that the declaration stands by itself, and does not involve executory process or coercive relief. Of course, a court is not empowered to decide moot ques-

tions or abstract propositions, either under the Uniform Act or any other procedure, however, convenient it might be to have the questions decided for the government of future cases, but will determine only actual controversies. Where, by act of the parties or subsequent law, the controversy has come to an end, the case becomes moot and should be treated accordingly. *United States v. Alaska Steamship Co.*, 253, U. S. 113, 40, S. Ct. 448, 64 L. Ed. 808; *Ladner v. Siegel*, 294 Pa. 368, 144 A. 274; *Reese v. Adamson*, 297 Pa. 13, 146 A. 262; *Revis v. Daugherty, Attorney General*, 215 Ky. 823, 287 S. W. 28. But it is obvious that complainant is not attempting to secure an abstract decision or one advising what the law would be on an uncertain or hypothetical state of facts. He is directly affected by the challenged statute. While the usual course of judicial procedure ordinarily results in a judgment requiring an award of process or execution to carry it into effect, such relief is not an indispensable adjunct to the exercise of the judicial function. In *Nashville, Chattanooga & St. Louis Ry. v. Wallace*, 288 U. S. 249, 53 S. Ct. 345, 348, 77 L. Ed. 730, 736, 87 A. L. R. 1191, brought under the Declaratory Judgments Act of Tennessee to secure a declaration that a tax levied on the storage of gasoline was invalid as applied to appellant. Justice Stone declared: "But the Constitution does not require that the case or controversy should be presented by traditional forms of procedure, invoking only traditional remedies. * * * It did not crystalize into changeless form the procedure of 1789 as the only possible means for presenting a case or controversy, otherwise cognizable by the Federal courts. Whenever the judicial power is invoked to review a judgment of a state court, the ultimate constitutional purpose is the protection, by the exercise of the judicial function, of rights arising under the Constitution and laws of the United States. The states are left free to regulate their own judicial procedure. * * * As the prayer for relief by injunction is not a necessary prerequisite to the exercise of judicial power, allegations of threatnened irreparable injury which are material only

if an injunction is asked, may likewise be dispensed with if, in other respects, the controversy presented is, as in this case, real and substantial."

In *Daniel Loughran Co. v. Lord Baltimore Candy & Tobacco Co.,* 178, Md. 38, 12 A. 2d 201, complainant used the procedure of the Declaratory Judgments Act to ask the Court to declare the 1939 amendment to the Fair Trade Act constitutional. The Court of Appeals, after making an exhaustive study of the constitutional question, held the amendment unconstitutional. Likewise, in *Oursler v. Tawes,* 178 Md. 471, 13 A. 2d 763, where certain citizens of Maryland attacked the constitutionality of the State Income Tax Law of 1939, we thoroughly discussed the validity of the statute, although no issue was raised as to the propriety of the procedure under the Declaratory Judgments Act. In other States declaratory judgment proceedings have been employed on many occasions to determine questions as to the validity or construction of statutes or ordinances. *Woolf v. Fuller,* 87 N. H. 64, 174 A. 193, 94 A. L. R. 1067; *Sage-Allen Co. v. Wheeler,* 119 Conn. 667, 179 A. 195, 98 A. L. R. 897; *W. H. H. Chamberlin v. Andrews,* 271 N. Y. 1, 2 N. E. 2d 22, 106, A. L. R. 1519, affirmed, 299 U. S. 515, 57 S. Ct. 122, 81 L. Ed. 380; *Jefferson County Distillery Co. v. Clifton,* 249, Ky. 815, 61 S. W. 2d 645, 88 A. L. R. 1361; *Family Loan Co. v. Hickerson,* 168 Tenn. 36, 73, S. W. 2d 694, 94 A. L. R. 664; *Local Union No. 26, National B. O. P. v. Kokomo,* 211 Ind. 72, 5 N. E. 2d 624, 108 A. L. R. 1111; *Boyer-Campbell Co. v. Fry,* 271 Mich. 282, 260 N. W. 165, 98 A. L. R. 827; State ex rel. *Froedtert Grain & Malting Co. v. Tax Commission of Wisconsin,* 221 Wis. 225, 265 N. W. 672, 267 N. W. 52, 104 A. L. R. 1478; *Little v. Smith,* 124 Kan. 237 257 P. 959, 57 A. L. R. 100; *City and County of Denver v. Lynch,* 92 Colo. 102, 18 P 2d 907, 86 A. L. R. 907; *Utah State Fair Ass'n v. Green,* 68 Utah 251, 249 P. 1016; *State ex rel. Sullivan v. Price,* 49 Ariz. 19, 63 P. 2d 653, 108 A. L. R. 1156; *La Franchi v. Santa Rosa,* 8 Cal. 2d 331, 65 P 2d 1301, 110 A. L. R. 639; 16 Am. Jur., Declaratory Judgments Sec. 24. The Federal Decla-

ratory Judgments Act of 1934, 28 U. S. C. A. § 400, has frequently been invoked as a means of testing the constitutionality of acts of Congress, even though the Act does not specifically authorize judgments as to the construction or validity of statutes. *Aetna Life Insurance Co. v. Haworth,* 300 U. S. 227; 57 S. Ct. 461, 81 L. Ed. 617, 108 A. L. R. 1000. Section 2 of the Maryland Declaratory Judgments Act expressly provides that any person whose rights, status or other legal relations are affected by a statute may have determined any question of construction or validity arising under the statute and obtain a declaration of rights, status or other legal relations thereunder. Section 12 declares that the purpose of the Act is to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered. Section 15 commands that the Act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those States which enact it and to harmonize as far as possible with Federal laws and regulations on the subject of declaratory judgments and decrees. We adopt the rule laid down in *Acme Finance Co. v. Huse, Director of Licenses,* 192 Wash. 96, 73 P. 2d 341, 114 A. L. R. 1345, Id., 194 Wash. 706, 77 P 2d 595, 114 A. L. R. 1360, that a person may obtain a judgment under the Uniform Declaratory Judgments Act declaring whether or not a staute is constitutional, and that a proper case for rendition of such a declaratory judgment is presented when the plaintiff alleges that he will be directly damaged in person or in property if the statute is enforced, and such enforcement will result in the infringement of his constitutional rights, and the defendant is charged with the duty of enforcing the statute and is enforcing it or is about to enforce it.

Complainant instituted this suit against the State of Maryland and the members of the State Board of Medical Examiners. We presume that he included the State, rather than the State's Attorney or the Attorney General, as a party defendant because he decided to stop advertis-

ing rather than run the risk of having his license revoked and consequently he was unable to allege that he had been threatened with arrest. The Court below properly sustained a demurrer filed by the Attorney General on behalf of the State Board. One of the highest attributes of sovereignty is the immunity of the State from suit at law and in equity by its own citizens or the citizens of any other State, unless it waives this immunity. *Hopkins v. Clemson Agricultural College*, 221 U. S. 636, 31 S. Ct. 654, 55 L. Ed. 890, 35, L. R. A., N. S., 243; *Dunne v. State*, 162 Md. 274, 159 A. 751, *certiorari* denied, 287 U. S. 564, 53 S. Ct. 23, 77 L. Ed. 497. Although a State may not be sued without its consent, an officer of the State acting under color of his official authority may be enjoined from enforcing a State law claimed to be repugnant to the State or Federal Constitution, even though such injunction may cause the State law to remain inoperative until the constitutional question is judicially determined. *Weyler v. Gibson*, 110 Md. 636, 73 A. 261, 17 Ann. Cas. 731; *Public Service Co. of Northern Illinois v. Corboy*, 250 U. S. 153, 39 S. Ct. 440, 63, L. Ed. 905; 49 Am. Jur., *States, Territories, and Dependencies*, Sec. 95. Professor Borchard claims that this rationalization is strained and unnecessary for the reason that it is the enactment of the Legislature, and not the personal view of the Attorney General, that creates the prejudice and jeopardy and motivates the right of action. Nevertheless, it has been held that the immunity of the State from suit is not modified by the Uniform Declaratory Judgments Act. *Purity Oats Co. v. Kansas*, 125 Kan. 558, 264, P. 740; *Borchard, Declaratory Judgments*, 2d Edition, 374. Since complainant stated in the Court below that he did not wish leave to amend, the Court was right in dismissing the amended bill of complaint.

The right to carry on any lawful business, trade or calling is subject to regulation by the Legislature under the police power of the State whenever necessary to promote in some degree the public health, morals or welfare. *Dasch v. Jackson*, 170 Md. 251, 183 A. 534. The Legisla-

ture, in enacting the statute now before the Court, aimed to aid in maintaining the high standard of ethics of physicians and surgeons. The State has the power to see that only persons with special training and skill shall undertake the difficult and responsible duties of dealing with the health and lives of the people. The State is vitally concerned in attracting young people of ability to this learned profession, and also in making it possible for those who are engaged in practice to survive without facing unseemly competition, thus leaving them free to improve their qualifications without the necessity of devoting a large part of their time and effort to ruthless competitive pursuit for patients. The Maryland Legislature determined that physicians of mediocre ability are likely to make up for lack of genuine merit by knowledge of mass psychology and skill in appealing to the emotions and hopes of the uninformed and credulous. Under the traditional method of professional advancement as a result of the recommendations of satisfied patients, the progress of a practitioner may be slow, but it bears more relation to merit; whereas mediocre practitioners who advertise extensively can obtain new patients by clever publicity as fast as the discovery of their mediocrity causes the loss of patients. It is well established that the State may lawfully forbid any advertising by medical practitioners that solicit patronage for the advertisers. *Laughney v. Maybury*, 145 Wash. 146, 259 P. 17, 54 A. L. R. 393. In *Commonwealth v. Brown*, 302 Mass 523, 20 N. E. 2d 478, appeal dismissed, 308 U. S. 504, 60 S. Ct. 96, 84 L. Ed. 432, the Court said that it is entirely possible that practitioners of unusual merit will eventually succeed without any advertising at all, but in the meantime thousands of people might receive inferior service in the belief, induced by skillful advertising, that it was superior. The Legislature had the right to determine, and did determine, that the public interest would be injuriously affected by unseemly competition of physicians and surgeons for patients without any restraint as to methods and that regulation of advertising by them is necessary for the public health, morals, or welfare.

In 1933 the Legislature of Oregon passed an act authorizing the revocation of the license of any dentist who advertises professional superiority or the performance of professional services in a superior manner, or advertises prices for professional service, or advertises by means of large display light signs, or signs containing a picture of a tooth or any portion of the human head, or employs advertising solicitors or frequently press agents, or advertises any free dental work or free examination, or advertises to guarantee any dental service or to perform any dental operation painlessly. A Portland dentist, attacking the statute, contended that in prohibiting advertising of the described character, even thought truthful, the law went too far, and that the superiority which he advertised existed in fact, and by his methods he was able to offer low prices and to render a beneficial public service contributing to the comfort and happiness of a large number of people. But the Supreme Court of Oregon dismissed the suit, declaring that while there is in itself nothing harmful in merely advertising prices for dental work or in displaying glaring signs, it could not be doubted that practitioners who are not willing to abide by the ethics of their profession often resort to such advertising methods "to lure the credulous and ignorant members of the public to their offices for the purpose of fleecing them," and that inducing patronage by representations of painless dentistry, professional superiority, free examinations, and guaranteed dental work is, as a general rule, "the practice of the charlatan and the quack to entice the public." *Semler v. Oregon State Board of Dental Examiners,* 148 Or. 50, 34 P. 2d 311, 313, 314. Chief Justice Hughes, in affirming the Oregon decision said: "We do not doubt the authority of the state to estimate the baleful effects of such methods and to put a stop to them. The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those who are traditional in the compe-

tition of the market place. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners, but protection against those who should prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief. And the community is concerned in providing safeguards not only against deception, but against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunties of the least scrupulous. * * * The legislature was entitled to consider the general effects of the practices which it described, and if these effects were injurious in facilitating unwarranted and misleading claims, to counteract them by a general rule even though in particular instances there might be no actual deception or misstatement." *Semler v. Oregon State Board of Dental Examiners,* 294 U. S. 608, 55 S. Ct. 570, 572, 79 L. Ed. 1086.

Complainant exhibited one of his advertisements, which reads as follows: "Do you suffer from gland troubles? * * * Call today and get my honest opinion of your condition. * * * Thousands are sick and ailing from neglect. * * * Call today and start yourself on the road to health. One visit may save you many years of worry. * * * Charges moderate. Terms for all. Dr. W. A. Davis, M. D., Doctor for Men. On the corner of North Howard and West Monument Streets." But he says he is not objecting to a law prohibiting deceptive advertising or schemes to take advantage of the public, or to advertisements offering professional superiority, guaranteed work, or free examinations. He contends that the restrictions imposed by the Act of 1943 are stricter than are necessary for the protection of the public health, morals or welfare, and that the provision for revocation of the license of a physician advertising in any manner other than that allowed by the statute violates the due process clause of the Federal Constitution. Necessarily there are limits to the valid exercise of the police

power of the State. Otherwise the State Legislature would have unbounded power and the Fourteenth Amendment would be ineffective, for then it would be enough to say that any piece of legislation was enacted for the purpose of conserving the health, morals or welfare of the people. *Adkins v. Children's Hospital of the District of Columbia,* 261 U. S. 525, 43 S. Ct. 394, 398, 67 L. Ed. 785, 24 A. L. R. 1238. If, therefore, a statute designed for the promotion of the public health morals, or welfare has no real or substantial relation to those objects, or is a manifest invasion of rights secured by the fundamental law, it is the duty of the court to adjudge accordingly, and thereby give effect to the Constitution. *Mugler v. State of Kansas,* 123 U. S. 623, 8 S. Ct. 273, 297, 31 L. Ed. 205.

But the police power is broad in scope, and the Legislature is vested with large discretion to determine not only what is injurious to the health, morals or welfare of the people, but also what measures are necessary or approprite for the protection of those interests. The exercise of the police power may inconvenience individual citizens, increase their labor, or decrease the value of their property. *Jay Burns Baking Co. v. McKelvie,* 108 Neb. 674, 189 N. W. 383, 26 A. L. R. 24. The courts will not interfere with the exercise of the power except where the regulations are arbitrary, oppressive or unreasonable. The wisdom or expediency of the regulations is not subject to judicial review. *State v. Hyman,* 98 Md. 596, 57 A. 6, 64 L. R. A. 637, 1 Ann. Cas. 742; *Hiller v. State,* 124 Md. 385, 92 A. 842; *Swann v. City of Baltimore,* 132 Md. 256, 261, 103 A. 441. Of course, the police power is subject to the limitations imposed by the State and Federal Constitutions upon every power of government, and the Legislature will not be allowed to invade the fundamental liberties of the citizen. *Asbell v. Kansas,* 209 U. S. 251, 28 S. Ct. 485, 52 L. Ed. 778, 14 Ann. Cas. 1101; *Buchanan v. Warley,* 245 U. S. 60, 38 S. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201; 2 *Cooley, Constitutional Limitations,* 8th Edition, 1229-

1231. But unless regulations are so utterly unreasonable and extravagant in their nature and purpose that the personal and property rights of the citizen are interfered with or destroyed unnecessarily and in a wholly arbitrary manner without due process of law, they do not extend beyond the power of the Legislature to enact, and they form no subject for interference by the Court on the ground of violation of the Fourteenth Amendment. *Gundling v. City of Chicago*, 177 U. S. 183, 20 S. Ct. 633, 635, 44 L. Ed. 725; *Williams v. Arkansas*, 217 U. S. 79, 30 S. Ct. 493, 54 L. Ed. 673, 18 Ann. Cas. 865; *Watson v. Maryland*, 218 U. S. 173, 30 S. Ct. 644, 54 L. Ed. 987, affirming *Watson v State* 105 Md. 650, 66 A. 635.

Applying this test, we find that the statute under review is a valid exercise of the police power of the State. A similar statute, enacted by the Legislature of Illinois, provided that any dentist may use a professional card, if it contains only the name, title, degree, office location, office hours telephone number, and also, if desired the residence address and telephone number; that the card shall not be larger than 3½ by 2 inches; that the same information may be inserted in public print when not more than a column in width and 2 iches in depth; that a change of place of business or absence from or return to business, may be announced in the same maner; that he may issue appointment cards to his patients when the information thereon is limited to the time and place of appointment and the matter permitted on the professional card; that his name may be displayed on the premises where he is engaged in the profession, provided that his name and title shall not be displayed in lettering larger than 7 inches. A dentist of that State challenged the constitutionality of the statute, but it was upheld by the Supreme Court of Illinois. *Winberry v. Hallihan*, 361 Ill. 121, 197 N. E. 552.

Finally, complainant cannot object because the particular regulations imposed by the Act of 1943 are limited to physicians and surgeons and is not extended to other professional classes. The State was not bound to deal

alike with all these classes, or to strike at all evils at the same time or in the same way. It can deal with the different professions according to the needs of the public in relation to each. We find no basis for the complaint of unconstitutional discrimination. *Semler v. Oregon State Board of Dental Examiners,* 294 U. S. 608, 55 S. Ct. 570, 571, 79 L. Ed. 1086.

*Decree affirmed, with costs.*